Good morning. May it please the Court, Randy Pickett appearing along with Matt Kaplan on behalf of the plaintiff's appellant, Daniel Stringer. The issue in this case is did the District Court err in granting the defendant's motion to dismiss based on Oregon's recreational immunity statute? And we believe the answer to that question is yes, the District Court did err because it ignored the clear and unambiguous language of the statute, it ignored controlling precedent in the Coleman case, and it further ignored the legislative changes that were made one year after the Coleman case was decided, which was 2009, legislative changes in 2010, which reinforce the interpretation that plaintiff has of the recreational immunity statute and the Coleman majority decision had, which is if you, as the landowner, make any charge for use of the land for recreational purposes, you forfeit your immunity. Plaintiff said that if none of the cases, Coleman in particular, deals with it, Dana, through himself, did not pay a charge. Do you agree? Well, there are cases that deal with this issue, Your Honor, and, in fact, one of the cases... Is there a case on point in your view? Yes, there's a case from Wisconsin. There's a case from Wisconsin that, if you look at the legislative history of the recreational immunity statute in Oregon, and it's discussed in detail by Judge Landau, now Justice Landau, in the Coleman case. Basically, the recreational immunity statute goes back to the 70s, and it originally was adopted by a state council of governments. It came from Wisconsin previous to that time, and Wisconsin has addressed this issue of a non-paying individual. Which case is that? It's Douglas v. Dewey. Yes, Douglas v. Dewey, Your Honor, that's correct. And in Douglas v. Dewey, there was an individual who was a guest of a mobile homeowner. This was a private business, and the guest dove into the lake and was seriously injured and brought a claim against the landowner. The landowner claimed immunity. Clearly, the guest herself had not paid any charge. And the court decision primarily focused on the meaning of the statute in terms of an aggregation of a $500 charge, which was in the Wisconsin statute. And the court basically held that the instruction was incorrect because you aggregated all charges. Here's the problem that I have. In the cases in which courts have held liability, let me focus on Coleman and Douglas. So the case you think is most analogous, Douglas, and the case that's obviously most appropriate here, which is the Oregon courts' decision in Coleman. Both of those involved relatively small parcels of land. In Douglas, it's five acres. In Coleman, the Tuckman Park was 540 acres. We're dealing with 1.8 million acres. That's over 3,000 times the size of the parcel in Tuckman. And you are 45 miles from the nearest place that you're charging for anything. We have various named wildernesses. You simply feel you're the rubric of the forest. And the forest contained all kinds of different areas and different amenities. Your claim was anywhere near where anything was being charged. Well, with all due respect, Your Honor, we did submit in the record below the fact that there were charges collected by the United States from an entity called Central Oregon Ventures that apparently involved, and, again, this is part of the record at the district court, if the promotion is dismissed, that involved charges apparently that involved snowmobilers going into this. Your client, the question that Judge Bivey asked, your client did not pay anything, correct? That's correct. And it was not required. It's not like your client was required to pay instead of going. Right. We still see that. Are we still dealing with the same question as you did? Is there any case in which the Oregon statute has been applied to abrogating that, if you will, to get past immunity, where the plaintiff did not pay to get onto the property? Well, in effect, there is, Your Honor. It's the Coleman case that the plaintiff did pay. Coleman? Coleman. It's clear that the plaintiff paid to get onto the property. He then went and did something else. My question is very specific. Is there any case in which the immunity statute has not been applied in that way, where immunity has been denied, in which the plaintiff did not pay to come onto the property? Well, again, we cited a number of cases from other jurisdictions. No, no, no. Tell me which case. Dewey is a case in which there's a very different statute. Dewey is a case in which the statute says if the defendant charges more than $500 in the aggregate to get on the property, then there's no immunity, and the court's dealing with that. I want to know whether or not under the Oregon statute or any other statute that you've been identifying, there's a case in which immunity has been denied when the plaintiff did not pay to come onto the property. There may be such a case. The New Hampshire case may be one of those, but this also looks like a very, very different situation because clearly she was coming to watch her daughter ski, and the group had paid an extensive fee in order to use the area. She's injured in the area that the group had rented. That just looks very different from the kind of situation we're faced here. Your client just has nothing to do with anybody or anything who's paid a fee. Well, I would agree entirely with everything Your Honor is saying, and I would say that it's very simply what the legislature could have put into the statute, and, in fact, what the defense is arguing for here is to add to the phrase the immunities provided do not apply if the owner makes any charge for permission to use the land for recreational purposes. That is very clear language. There's nothing ambiguous about it. It doesn't say you have to pay every issue. The Oregon court also reserved a couple of different situations. One was the majority was the 108-foot parcel in which 10 acres was devoted to a horse riding facility. The other 90 acres are just free, and if you come and use the remaining acres as part of a horse facility, the miter might not fall within the statute. This just looks like a very different situation from that. I would agree entirely. It's a limited area, even if the Oregon Supreme Court thought that there was going to be a liability there, and they clearly decided not to answer the question, so it's a close question for them. Yes, that is true. They reserved that particular hypothetical question for another date. But, again, responding to Your Honor's point about 1.8 million acres, yes, it's quite a bit larger. Again, the legislature could have written in language this statute does not apply to any parcels or resettlement. It's just a naming problem by the United States. If they have all these different areas within the statute for us, if they just called it something, if they just named it in this individual parcel, it would now be out of liability. In other words, the problem was they just incorporated a very, very large area running through Central Oregon called the Shoe Saxon Forest. Yes, that's exactly right, Your Honor, and basically that's exactly what the legislature addressed, apparently in light of the Coleman decision in 2009, the legislature in 2010. Remember Justice Balmer, in his dissenting opinion, talked about something about, I don't understand the majority's opinion here, but it's either one of two things. He said, number one, it's an anomalous situation where somebody who doesn't pay doesn't get immunity and somebody who does, does. And then he said, or it's the second scenario, which is that you can divide this into parcels and put up notices to get immunity for the parcels that you probably get notice at. The legislature, in light of that decision, then passed a law in 2010 saying, yes, we agree with Justice Balmer's second scenario, not the first. Which would have led to anomalous results with the second, and they basically said. Before you read that, can I insert a question for you? Sure. On the second topic. In discussing the issue of notice, I'm going to quote you from your brief. Quote, on land where no fee is charged, recreational immunity would bar all legitimate claims. On land where a fee is charged, recreational immunity would be waived altogether, regardless of the land user's payment. And doesn't that resolve this case in this way? No fee was charged on land used for snowmobiling, so the immunity is preserved. Apparently the snowmobiliary was, as noted, quite a distance away. Or is it your position that there had to be a physical barrier or a partition, taking Judge Biden's comment about how large this tract was, in order to make clear that this was somehow separate and apart? Is that what you're saying? Are you saying that a physical barrier or a partition would make a difference to your position? We're saying the language of the statute, Your Honor, which it says is false. It says. Well, I'll let you answer with the statute, but can you answer my question, yes or no? Well, again, Your Honor, I don't think it's acceptable to say yes or no answer. We believe that they could have parceled the land in compliance with the statute, and the statute talks about hosting part of a receipt or other such means may reasonably be calculated to apprise a person of the fact that we have separate parcels of land here. And, again, with respect to the snowmobiling issue. Your answer is the only way they could obtain immunity is by following the notice provisions of the required statute? If they're going to charge money for it. Like I'm saying, that's a big portion of 1.8 billion acres. Yes, that's what the statute says. Here's my difficulty. Sometimes it's not an easy case, but when you stand up and say the statute is clear and the precedents are clear, that's a hard time. The statute's not all that clear, and none of the precedents actually deal with your case. So that's where it was from. Well, I would concede that, Your Honor, and I constantly remind myself never to use the word clear in an oral argument. Here I've violated that rule a number of times. But, in any event, I think just one final comment. The legislature has given the United States a method or means by which they could comply with their ability to charge for part of the land. And, again, this was not a summary trial case. The motions have said it. I understand the position, Counselor. You're out of time. I will allow you time for a couple of minutes. Thank you. Certainly, Your Honor. May it please the Court, James Haas, appearing on behalf of the United States. The Forest Service did not request or expect any fee from the plaintiff in return for granting him permission to recreate in the District's National Forest. For that reason, the government is entitled to immunity under Oregon State law. Judge Roberts, in response to your point about the ambiguity, the government would take the position that the District Court's decision was correct for the exact same reasons that Mr. Dickett was claiming. The Coleman decision, the text of the statute, and the 2010... Well, Judge, let's just... We'll work two things, because here's my problem. Coleman doesn't deal with this situation, correct? That's correct. Coleman deals with somebody who's charged being on land, and the Court says, well, maybe if you parceled it out, we might have a different case. The legislature then reacts and passes a bill which says, we'll protect the landowners. Here's what we're doing. If you're charging people to come on a portion of your land, get them a receipt and tell them it only covers this portion. Give them some notice. That really doesn't deal with the situation either, because it's a situation where somebody is being charged with different portions of the land, and this claim is not paid. So tell me how I put those together before I make the decision. Those amendments are critical, Your Honor, and they're critical for three reasons. The first reason is just the general proposition that the Oregon legislature intended for there to be a broad degree of immunity in Oregon for landowners. Couldn't I read it just the opposite way? Couldn't I read it as the legislature saying, the only circumstance in which I would give immunity to a landowner who charges people to come onto his property is when that landowner provides notice that a certain area is not excluded from the agreement? Well, Your Honor, it certainly covers the situation here where the visitor did not pay any fee. It effectively overrules the Coleman decision by saying that we're going to give landowners a safe harbor and provide them immunity, even for individuals who actually paid a fee for certain recreational purposes. I read the statute as saying that if you pay a fee, you can still be excluded from the vote. The landowner will still be immune if he gives notice. If you don't pay a fee, there's no need to give notice. Is that what you're reading in the statute as well? I believe so, Your Honor. It has two parts. It provides immunity for purposes other than for which the fee was charged, and also allows the landowner, if it charges a fee for any use of the land, to carve out that land from separate lands. It doesn't deal expressly. We're all trying to find something out of it. It doesn't deal expressly with the circumstances we have in these cases. It does, Your Honor, and the Forest Service is not claiming the benefit of that safe harbor, but really the key relevance of that amendment to the statute is what it shows the legislature intended with respect to the meaning of what the charge is. And how it does that is by presuming. The legislature presumed that a receipt would provide notice to affected individuals of the limitations of the landowner's waiver of sovereign immunity. Only individuals who actually pay a fee will ever receive that receipt. Someone like Michelle Davis of the only legislature contemplated that notice might be given on a receipt. It also contemplated that it might be given. Probably can't do it in the district, as far as 1.8 million acres, but if I have a 20-acre parcel, they can put up a sign that says, Stay out of this if you're going to do it that way. So, I charge you to come and look at my board and look at the benefit points for a fee if you're going to put up a sign that says that you're not doing it. There are a couple of other ways, but the specific example used by the legislature was a receipt indicating that they viewed the definition of a charge as being applicable specifically to the person who's bringing the claim. And Your Honor's question about the impact here actually raises a good point as to how if the Forest Service had taken advantage of that safe harbor, how that would affect Mr. Springer's claim here, because he was not in any of these recreational areas where a fee was actually charged for some use. In other words, he was not a camper who was at one of these campsites 45 miles away for which the Forest Service actually did expect a fee at the time of the snowmobiling incident. I'm looking at the declaration from Mr. Larkin. I'm looking at paragraph 2 where he describes the Seuss National Forest. It says it's being divided into three ranger districts, and then he says that the boundaries of the Seuss National Forest is Newberry National Volcanic Monument, five wilderness areas, six national wildwoods, eight rivers, the Oregon Cascade Recreation, and Metolius Conservation Area. Are those areas separately marked? Are they labeled now entering Newberry National Volcanic Monument? I'll be going outside the record to answer that question. There's nothing in the record that describes. I wish there had been. It would have been very helpful for us to know how this 1.8 million acres is divided up. Where I'm from in southern Nevada, we have Toyo Bay National Forest. Toyo Bay National Forest is sort of scattered in parcels all over the place with large stretches of land in between them. I don't know how they're connected. I'm afraid to note, which the records show, which of any of these areas Mr. Stringer was in. The record does not reflect that, Your Honor. The record reflects that Mr. Stringer was in Snowmobile Trail number five. We don't know whether that was in the Oregon Cascade Recreation Area or the Metolius Conservation Area or something else. The record declaration does not establish that. What it does establish is that the Snowmobile Trail was in a specific ranger district within the forest. And that the space where the forest service, the ranger district seems to be really convenient for the forest service, but if you possibly thought it might have been marked as Newberry National Volcanic Monument or now entering Oregon Cascade Recreation Area, then there might be grounds for saying, look, it's a national forest, it's just a symbolic category to apply this law to. It actually has to probably be applied to the subcategories within the state's national forest area. But I think I kind of got that level of detail from anything that was done here. Well, Judge, one point I'd like to make is that the forest service is not saying that these were charged for those specific areas. We never got to that level of detail, but it might have been helpful if these are separately labeled areas. You might have a point of reliability if you're only charging within the Newberry National Volcanic Monument for camping but not within the Oregon Cascade Recreation Area. Well, you know, the government attempted to do that with respect to the areas where a fee was directly charged by the forest service at the time of the snowmobile accident with referring to the boundaries of Snowmobile Trail 5 and referring to the boundaries of these very few camping areas that were actually open during the winter. So does the record contain signs that would tell me, as a person driving or snowmobiling or cross-country skiing, what I'm entering, where I am, or does it just say the National Forest? It does, and there's nothing in the record about the boundaries between these specific areas. The government did attempt to establish that there are specific maps that establish the boundaries of Snowmobile Trail 5. I looked for all the maps, but I couldn't find the maps, and they gave me the detail that apparently you have. It just looked like it was already given to us. Well, and then I'd like to reemphasize that this is a secondary argument by the government. The first argument was that it's a matter of law, because Mr. Stringer did not pay a fee personally, that a charge did not exist. Can I have you comment on that briefly? Your opponent points out absurd results which might follow from concluding that immunity is only waived in favor of a person who's paid a fee. Again, in the reply brief on page 3 and 4, they throw out several hypotheticals. Can you address those? Yes, at a test area, I certainly can. Some of the hypotheticals the government just disagrees. For instance, if one person in a group pays a fee directly to a landowner on behalf of the whole group, then the landowner has requested or expected a fee from every member of that group. So recreational immunity is waived for every member. In some aspects, there is no such thing as an immunity case. I didn't expose your honor, and I'd like to also just point out the Wisconsin case. This court has said in D.C. v. United States that you have to be careful applying other states' statutes, because the statutes are written very differently. But Mr. Pickett did correctly point out that the Oregon statute is derived from the Wisconsin statute, and the Wisconsin court recently did apply or find that immunity was waived by things paid by other people. That duty case from Wisconsin is actually very important and supports the government's position, because it states that Wisconsin did a 180 in the 1980s. Up until the 1980s, Wisconsin was a strict quid pro quo between the specific plaintiff and the landowner. In 1983, they specifically amended their statute. In fact, that's why I'm having some difficulty finding the statute of use, because it has a provision in it that says if you collect more than $500, these certain consequences follow. The Oregon statute doesn't have that language, and it doesn't. So one way or the other, you both love the Wisconsin case, but it's a very different statute, isn't it? And if I may interject a bit, I see my time is up, Your Honor, if I can respond to that. It currently now is a very different statute, and that's because of the change made in the 1980s. But that case from Wisconsin actually specifically demonstrates that the model of the statute that is now the Oregon statute required a quid pro quo, because that's where Wisconsin was up until the legislature made those specific amendments. And closing, Your Honor, the government would contend that since the district court correctly found that no charge existed in this case, that the district court's judgment should be affirmed. Thank you, Mr. Clemson. Mr. Bickett, I'll give you a minute. Thank you, Your Honor. First point, counsel just argued that the 2010 amendments support their position that it's got to be a person who paid the charge that this extension of immunity applies to. But that's not what the statute says. In fact, it begins by saying notice under the subsections may be given by posting, that's the first word, as part of a receipt, that's the second word, or by other such means. So a reading of that section together with Section 4, which sets out the provisions where you can set out, you can get immunity for parcel of land where you don't charge a fee and you forfeit them for the parts you do charge a fee. If the government had posted them, they would have posted them 45 miles where your client was, right? No, we disagree with that, Your Honor. Again, the record does contain evidence that the snowmobiling that were charged to me for snowmobiling trails, and the government wants to warn you that if you camp on their campsites, you've got to be very careful around the river. You don't want to assume liability for the river because it's too shallow and it varies times of the year. It would be easily done at a campground of modest size. If you're 45 miles away, you're supposed to post and say, although we charge our campsites 45 miles from here, you just want to let us know that you assume the risk when you snowmobile on our trails. Well, that's a very valid point, Your Honor. Again, I just like to know the technical meaning of the statute here, but if it's some sort of foolish move. Well, yes, but again, it could have simply been solved by placing the sign at the trailhead saying snowmobile on this trail, eternal risk. There is no recreational immunity that does apply here. So it didn't have to be 45 miles away. There was a lake they went to where there was a line. They could have posted it there. There were all sorts of possibilities. Thank you. Thank you. That's pretty good. We thank both counsel for the argument. Springer v. USDA, it's submitted. The next case on the calendar is Zang v. Stitten's Restaurant.
judges: Bybee, Hurwitz, Zouhary